**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| BABAK HERAVI, | * |
| Plaintiff, | * |
| v. | *   Case No.: PWG-15-1178 |
| GAMING NETWORK SOLUTIONS, LLC, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Babak Heravi co-founded Defendant Gaming Network Solutions, LLC, ("GNS") and has brought a ten-claim complaint against GNS in a dispute relating to certain equity that he previously held in GNS and alleged fraud on the part of GNS for its use of his social security number to receive payments. Heravi claims that this equity stake, which he initially paid for with debt, was subsequently part of his compensation under an employment agreement. Separately, he also claims that GNS violated an operating agreement with respect to certain financial disclosures that it was obligated to make. GNS disputes the existence of the employment agreement, denies any fraudulent misconduct, challenges the sufficiency of his pleadings with respect to the breach of the operating agreement claim, and has filed a motion to dismiss. Def.'s Mot., ECF No. 17.[1]

---

[1] Accompanying GNS's motion to dismiss is a memorandum of law, Def.'s Mem., ECF No. 17-1. Heravi has filed an opposition, Opp'n, ECF No. 18, and GNS has filed a reply, Reply, ECF No. 19. A hearing is unnecessary in this case. *See* Loc. R. 105.6.

I will grant in part and deny in part GNS's motion to dismiss. Because I find that Heravi has pleaded sufficient facts to establish the existence of an employment agreement between him and GNS, I will deny GNS's motion to dismiss with respect to his breach of contract and implied contract claims. Based on this finding, I also will deny GNS's motion to dismiss with respect to Heravi's promissory estoppel and equitable estoppel claims. I will also deny GNS's motion to dismiss with respect to the breach of contract claim relating to GNS's operating agreement because he has pleaded sufficient facts to support this claim. Because Maryland law does not recognize independent claims in these circumstances for breach of the covenant of good faith and fair dealing, accounting, and fiduciary duty, I will grant GNS's motion to dismiss with respect to these claims. Further, given that Heravi has not demonstrated that monetary damages are an insufficient remedy, I will dismiss Heravi's claim for specific performance. Finally, due to Heravi's failure to allege with sufficient particularity that GNS made its statement about the use of his social security number in conjunction with the PayPal and Facebook accounts with the intent to defraud him, I will grant GNS's motion to dismiss with respect to his fraud count but will permit Heravi to amend his complaint again to include a negligent misrepresentation claim based on GNS's use of these accounts.

I.     BACKGROUND

Heravi co-founded GNS in 2012. Am. Compl. ¶ 8, ECF No. 13. GNS is "a developer, provider and operator of online and mobile interactive multi-layer game applications and turn-key solutions participating in the worldwide market." *Id.* ¶ 5. During the course of his employment relationship with GNS, Heravi received certain equity (the "Equity Stake") in GNS by exercising an option under a February 1, 2012, Professional Services Agreement. *Id.* ¶¶ 17–19. Heravi paid for this option through a loan from GNS pursuant to a four-year note. *Id.*

In late 2012, Heravi's professional relationship with GNS appeared to have soured, which led to the termination of his Professional Services Agreement in February 2013. Following the termination of the Professional Services Agreement, Heravi received an email from GNS's other co-founder, William Wade, about Heravi continuing his work for GNS. *Id.* at ¶¶ 8, 25. On June 13, 2013, Wade emailed Heravi as follows[2]:

> Bobby,
>
> I discussed our conversation from mid May with John and further got some input from Patrick. As you may be aware, Michael D'Arrigo, a very experience engineer and product manager was brought on late last year. Michael has been driving the fixes to our system, the audit with GLI, and readying the company for real money launch.
>
> He has done an excellent job under John and Patricks counsel, and has brought together a real sense of teamwork and productivity that did not exist prior to his joining the company. Real money play and the add of a call center in Manila have gone into production and the product was launched live last weekend for real money play.
>
> I exposed your interest to remain involved with GNS with John and Patrick. I think under the current team culture, an "on call" availability is agreeable, so long as we do not have disruption to the new culture and smooth operations enjoyed by the team executing the business plan today.
>
> As we discussed, the board supports the decisions and actions of John and I do not want to undermine his authority and executive control of the company. I was able to get John and the board to agree upon a compromise to avail an availability in the future of your past knowledge and experience, if it is needed and as a informal collaborative engagement. In exchange, we are willing to waive any further payment requirements for the purchased equity for you to be available as needed as a special consultant. The shares would remain in escrow during this informal time horizon and we would have no termination right to the engagement other than the right to not collaborate if the energy did not prove to be a value for the company. In effect, you will be connected to the company as a special advisor and the note payments would be booked as compensation whether you provided any services or not.

---

[2] Because GNS believes that the determination of whether a contract exists requires viewing the entire email, I have included the full text verbatim with any spelling and grammatical errors as existed in the original.

3

> If we find that the engagement becomes more than periodic sound boarding, we can re-evaluate the engagement and move to a more formal process
>
> I think this enables us to put behind the past and move forward as engaged shareholders all seeking success and shareholder distributions when we reach profitability. Certainly that's why I've supported this financially with no payments to date for any energy I've invested dating back to 2005, and I'd assume as a significant shareholder, your in it for the same.
>
> Glad to discuss this further when we have our monthly call this week
>
> All the best.
>
> Bill Wade

Jt. Rec. 3, ECF No. 19-1.  That same day, Heravi responded by stating:

> First of all I am glad that I am still part of the family and I am happy that now we have someone who can get things done the way its desired. I gladly accept this proposal regarding my relationship with the company and thank you for making this happen. I know, going forward, I will show myself more and more useful and will be on the side that I love and enjoy also you, John and Patrick and of course the rest of the team's side. As I am writing these lines, I assure you, with my honor, that I do not have any problem what so ever with anybody in the company and my only intention is to be at service.
>
> Regarding the compensation, I can only say thank you, as I did not have any intention to be paid and my old offer also a $1 per month would have subside too. I am not saying this, because I do not need money, but because, I feel that helping at this time is more important than money. I have friends there that are worth more than any money in the world to me and they have already put a lot to make this happen.
>
> Please lets talk tomorrow to work out the details so we all are on the same page and know what are the requirements and time frames. Again thanks for your, as always positive and supportive, efforts and I am so happy that I have you in my life as my close friend.
>
> Best wishes
>
> Bobby Heravi

*Id.* at 2.  On June 14, 2013, Wade replied with the following:

> Bobby,
>
> Still sick as a dog with Officemax breathing down my neck. So sorry.

4

> Thanks for the response, glad we can move forward this way. I've sent Patrick and John and email requesting areas that they think your insights and help could be contributing. Waiting for their response. Everyone is thrilled we are making this shift in a positive direction. Fred also excited.
>
> I'm hoping this cold will run its course. Hate to push another day but if you have time, lets to it tomorrow without other distractions and a voice that is gruffy and scorched.
>
> Love you brother,
>
> Bill

*Id.* Following this exchange, Heravi received a new email address and performed certain tasks on behalf of GNS. Am. Compl. ¶ 30. Heravi also received credit towards the monthly note payment, as explained in an email from GNS's CEO, John Cramp, which stated that Heravi received "the equivalent of your monthly note payment" as wages and that Heravi's 1099-MISC reflected these payments. Jt. Rec. 5. In late 2013 and early 2014, the relationship between Heravi and GNS, specifically Cramp, appears to have soured again over a dispute regarding a new employment agreement. *See* Am. Compl. ¶ 34–37. In December, GNS declared that Heravi was in default of his note relating to the Equity Stake. *See id.* ¶ 41; *see also* Jt. Rec. 8. GNS then executed a "closed auction" whereby the Equity Stake was sold for a net price of $49,290. Am. Compl. ¶ 49. Heravi valued the Equity Stake in excess of $545,000. *Id.* ¶ 48.

With respect to the payments that Heravi received from GNS corresponding to Heravi's monthly obligations on the note for the Equity Stake, Cramp stated in a January 9, 2015, email that

> [w]hen [the original 1099-MISC] was prepared, it was assumed you were going to execute the revised GNS Services Agreement as presented to you in October 2013. Since you decided not to execute this agreement, $2,536.40 (eight note payments) of the total $20,485.25 reported income as no longer correct. A corrected 2013 1099-M has been prepared in the amount of $17,948.55, (attached). This corrected statement will also be filed with the [the Internal Revenue Service ("IRS")].

5

Jt. Rec. 9.

Separately, as part of his work for GNS's predecessor DG Holdings, "Heravi opened a PayPal account and a Facebook account" so that DG Holdings could "collect money generated from its online games" through these accounts. Compl. ¶ 58. Heravi used his personal information for these accounts, including his social security number. *Id.* After GNS acquired DG Holdings's assets, Heravi gave his log-in credentials to Cramp to oversee the accounts. *Id.* Cramp represented that all of Heravi's personal information would be removed from the accounts. *Id.* ¶ 59. GNS used accounts with Heravi's social security number for some of its business transactions and received income associated with his social security number, resulting in tax deficiencies that Heravi owed the IRS. *See id.* at ¶¶ 59–61.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from

*Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. I must accept the facts as alleged in Plaintiffs' complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

Plaintiff's fraud allegations must meet the "heightened pleading standard under Rule 9(b)." *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

> Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form. The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation.

*Id.* (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 782 (4th Cir. 2013).

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.

1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011). If the documents that the Court considers exceeds this scope, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013). In considering GNS's motion to dismiss, I have only looked at those exhibits attached to Heravi's pleadings or those exhibits attached to the parties' filings with respect to this motion that are integral to the amended complaint and the authenticity of which has not been disputed. *See* Jt. Rec.

### III.   DISCUSSION

As an initial matter, Heravi pleads a number of claims relating to GNS's sale of his equity stake, some of which are contradictory.[3] "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). *See also Swedish Civil Aviation Admin. v. Project Mgmt. Enters.,* 190 F. Supp. 2d. 785, 792 (D. Md. 2002) ("[A]lthough [the plaintiff] may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute."). As a result, I need not decide at this stage of the litigation whether certain of Heravi's claims preclude others on the basis of the consistency of his claims.

The focus of GNS's argument to dismiss Heravi's claims relies on its contention that no contract existed between Heravi and GNS with respect to the Equity Stake. As a result, I will

---

[3]   For example, a breach of contract claim requires the existence of a contract and a promissory estoppel claim allows for recovery in the absence of relevant contract where there exists a contractual relationship. *See Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 321, 343–44 (D. Md. 2012).

first address whether Heravi's breach of contract and implied contract claims should be dismissed before proceeding to GNS's arguments with respect to Heravi's other claims.[4]

### A.  Counts 2 and 3: Breach of Contract and Implied Contract

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). "The elements of a claim for breach of contract include 'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda,* 198 Md.App. 337, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)). GNS has not challenged the breach or damages element; GNS instead contends that there is no contractual obligation between it and Heravi regarding its payment of his debt used to finance the purchase of the Equity Stake.

"Under Maryland law, '[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding*, 714 F.3d at 777. "It is axiomatic that for a contract to be valid, both parties must mutually assent to be bound by it." *NeighborCare Pharmacy Servs., Inc. v. Sunrise Healthcare Ctr., Inc.*, No. JFM-05-1549, 2005 WL 3481346, at *2 (D. Md. Dec. 20, 2005). However, the parties' signatures are not necessary; "[t]he manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." *See id.* (quoting 17A Am. Jur. 2d Contracts § 34 (2004)). A contract may either be express or implied. *See Spaulding*, 714 F.3d at 777. "An

---

[4] For ease of reference, I will refer to Heravi's claims in his amended complaint as counts. For example, I will refer to Heravi's "Second Claim" as "Count 2."

agreement implied in fact is founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Id.* (citations omitted) (internal quotation marks omitted).

Heravi has pleaded sufficient facts in his amended complaint, in conjunction with the attached email exchange between him and Wade, to survive GNS's motion to dismiss. The email exchange shows an offer by Wade, an acceptance by Heravi, and Wade's affirmative reply. *See* Jt. Rec. 2–3. The arrangement provided for Heravi to "be available as needed as a special consultant" and GNS retained "no termination right to the engagement other than the right to not collaborate if the energy did not prove to be a value for the company. . . . the note payments would be booked as compensation whether you provided any services or not." *Id.* at 3. The availability of Heravi to work on behalf of GNS and the waiver of the note payments related to the Equity Stake represent consideration. The email exchange demonstrates a "meeting of the minds" between Heravi and Wade regarding the services that Heravi would performance and the compensation that he would receive for these services.

Even if Heravi did not plead facts sufficient to support an express contract, the conduct of the parties would be sufficient to support a finding that an implied contract existed between Heravi and GNS. Specifically, GNS admitted, through Cramp, that Heravi received "the equivalent of [his] monthly note payment" as wages. *Id.* at 5. This conduct, in conjunction with the work that Heravi states he performed for GNS under the agreement, supports the existence of an implied agreement. GNS's effort to recharacterize Heravi's income through an amended 1099-MISC is unpersuasive. *See id.* at 9.

For these reasons, GNS's motion to dismiss with respect to Counts 2 and 3 will be denied.

### B. Count 1: Specific Performance

Under Maryland law, "[s]pecific performance is considered an extraordinary equitable remedy which may be granted, in the discretion of the chancellor, where more traditional remedies, such as damages, are either unavailable or inadequate." *Archway Motors, Inc. v. Herman*, 37 Md. App. 674, 681, 378 A.2d 720, 724 (1977). Maryland courts have recognized that specific performance may be the appropriate remedy where "the value of the stock is difficult to ascertain, and cannot be obtained elsewhere." *Ryan v. McLane*, 46 A. 340, 344 (Md. 1900). However, Heravi has not pleaded any facts supporting his position that specific performance—as opposed to monetary damages—is the necessary remedy, nor has he shown why specific performance is appropriate in his filings beyond the conclusory statement that "specific performance is an appropriate potential remedy. . . ." *See* Opp'n 21. For these reasons, I will grant GNS's motion to dismiss with respect to Count 1, specific performance, as it relates to Heravi's breach of contract claim.

### C. Count 4: Breach of Covenant of Good Faith and Fair Dealing

"Maryland recognizes that every contract imposes a duty of good faith and fair dealing in its performance. However, Maryland courts have not explicitly recognized a separate cause of action for breach of this duty." *Abt Associates, Inc. v. JHPIEGO Corp.*, 104 F. Supp. 2d 523, 534 (D. Md. 2000), *aff'd*, 9 Fed. App'x 172 (4th Cir. 2001) (internal citations omitted). The duty of good faith and fair dealing "is merely a part of an action for breach of contract," and to the extent that a plaintiff has already stated a claim for a breach of contract, a duplicative claim for

breach of the duty of good faith and fair dealing should be dismissed. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002). Heravi's claim under Count 4 is the same as his claim for breach of contract. *See* Am. Compl. ¶¶ 68 & 69. For this reason, I will grant GNS's motion to dismiss with respect to Count 4.[5]

### D. Count 5: Promissory Estoppel

Under Maryland law, promissory estoppel consists of

> (1) a clear and definite promise; (2) a reasonable expectation by the defendant that the offer will induce action or forbearance on the part of the plaintiff; (3) actual and reasonable action or forbearance by the plaintiff; and (4) detriment to the plaintiff which can only be avoided by the enforcement of the promise.

*Abt Assoc.*, 104 F. Supp. 2d at 536 (citing *Pavel Enter., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 533 (Md. 1996)); *see also Newton v. Kenific Grp.*, 62 F. Supp. 3d 439, 444 (D. Md. 2014). Because I find Heravi has pleaded facts sufficient to support his breach of contract claim, I also find that he has pleaded facts sufficient in the alternative to establish GNS promised him that it would waive note payments related to the debt on the Equity Stake. GNS has only challenged Heravi's promissory estoppel claim on the basis of "the existence of an enforceable contract." *See* Def.'s Mot. 16–17. Accordingly, I will deny GNS's motion to dismiss Count 5.

### E. Count 6: Equitable Estoppel

---

[5] Heravi appears to argue in his opposition that Count 4 relates to his claims for both breach of the employment agreement and breach of the Operating Agreement. *See* Opp'n 12 n.4. However, the allegations in his amended complaint referenced in Count 4 only deal with the breach of the employment agreement, *see* Am. Compl. ¶ 68 ("Mr. Heravi repeats and re-alleges each and every allegation contained in Paragraphs 1 through 67 of this Complaint, as if fully set forth herein."); his allegations concerning GNS's breach of the Operating Agreement do not occur until Paragraphs 80–83. As a result, even if I did not dismiss Count 4 on the grounds stated above, Heravi's breach of covenant of good faith and fair dealing claim would be dismissed as it relates to GNS's alleged breach of the Operating Agreement.

12

"[T]he essential elements of equitable estoppel are [1] voluntary conduct or representation, [2] reliance, and [3] detriment." *Markov v. Markov*, 758 A.2d 75, 81 (Md. 2000) (citations omitted) (internal quotation marks omitted). Because I find Heravi has pleaded facts sufficient to support his breach of contract claim, I also find that he has pleaded facts sufficient in the alternative to establish GNS promised him that it would waive note payments related to the debt on the Equity Stake and that he relied on this promise to his detriment when GNS declared him in default with respect to the debt on the Equity Stake. Accordingly, I will deny GNS's motion to dismiss Count 6.

### F. Count 7: Accounting

"In Maryland, a claim for an accounting is available when one party is under [an] obligation to pay money to another based on facts and records that are known and kept exclusively by the party to whom the obligation is owed, or where there is a [confidential or] fiduciary relationship between the parties . . . ." *Goldstein v. FDIC*, No. ELH-11-1604, 2012 WL 1819284, at *14 (D. Md. May 16, 2012) (alteration to restore accurate quotation of original source) (citations omitted) (internal quotation marks omitted). It is unclear from Heravi's amended complaint on what basis GNS would be under the obligation to pay him money except to the extent that the payments on the debt related to the Equity Stake constituted payments to Heravi. Regardless,

> "Because the relief sought in an accounting claim is access to information, discovery is the remedy given to plaintiffs who prove they are entitled to an accounting." In short, when a plaintiff properly pleads another cause of action that will entitle the plaintiff to discovery, the remedy of accounting is generally superfluous.

*Id.* (quoting *Golub ex rel. Golub v. Cohen,* 772 A.2d 880, 889 (2001)) (internal citation omitted). In limited circumstances, Maryland courts have recognized "a freestanding claim for accounting"

where remedies at law are not sufficient and a confidential or fiduciary relationship exists between the parties in a manner where one party has to duty to provide an account to the other party. *See id.* (citing *P.V. Props., Inc., v. Rock Creek Village Assocs. Ltd. P'ship*, 549 A.2d 403, 409 (1998)). However, claims for accounting have not survived "where 'discovery was otherwise available.'" *See id.*

Heravi states that, as a result of GNS's conduct, he has suffered losses relating to the value of the Equity Stake because "GNS appropriated Mr. Heravi's [Equity Stake] for its own account, and for the account of the third party GNS insiders, in an amount that Mr. Heravi is unable to determine without an accounting with respect to the true value of his [Equity Stake]." Am. Compl. ¶ 77. Because Heravi's breach of contract claim and other related claims survive this motion to dismiss, his claim for accounting is superfluous. As a result of these surviving claims, discovery will be available for Heravi to determine the value of the Equity Stake, who bought it, and the process by which it was sold. Accordingly, GNS's motion to dismiss Count 7 will be granted.

### G. Count 8: Fraud

To state a claim for fraud under Maryland law, Plaintiff

> must allege five elements with particularity: (1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result.

*Marchese v. JPMorgan Chase Bank, N.A.*, 2013 WL 136427, at *9 (D. Md. Jan. 8, 2013) (quoting *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. L–09–2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010) (citing *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534 (Md. 1982))). Also, as noted, Plaintiff must meet the "heightened pleading standard under Rule

9(b)," by "'stat[ing] with particularity the circumstances constituting the fraud.'" *Piotrowski*, 2013 WL 247549, at *5; *see Spaulding*, 714 F.3d at 782. However, Rule 9(b) permits "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

Heravi has failed to plead all of the necessary elements with sufficient particularity to survive the heightened pleading standards required by Fed. R. Civ. P. 9(b). Specifically, Heravi has not alleged with any particularity facts that suggest GNS made the statement that it was removing all of the personal information from the PayPal and Facebook accounts with the purpose of defrauding him. Because Heravi has failed to allege that GNS made these statements for the purpose of defrauding him, I will grant GNS's motion to dismiss with respect to Count 8.[6]

However, GNS appears to acknowledge that it continued to use PayPal and Facebook accounts with Heravi's social security number, stating that "[t]he continued use of Heravi's log-in credentials and passwords . . . may have been the result of a simple oversight rather than actual fraud" and "[r]ather, it is more plausible that, even if GNS did continue to use Heravi's log-in, it did so unbeknownst to it that Heravi's Social Security number was still associated with the accounts." *See* Def.'s Mot. 23–24. As a result, I will permit Heravi to amend his complaint solely for the purposes of including a negligent misrepresentation claim with respect to these allegations, provided there is a good-faith legal and factual basis for this claim.

### H. Count 9: Breach of Operating Agreement

With respect to Heravi's breach of the Operating Agreement, I will apply the same standard as my analysis of Counts 2 and 3, his breach of contract claims relating to his

---

[6] Because I find that Heravi has failed to satisfy this required element of a fraud claim, I do not need to determine if Heravi also failed to allege with sufficient particularity the other required elements of fraud.

employment agreement with GNS. His pleadings with respect to Count 9 are minimal but sufficient. I read him as alleging that the operating agreement to which he and GNS were parties obligated GNS to make certain disclosures to him regarding its financial records and that it failed to do so. These allegations are sufficient, but just barely, to support Heravi's claim for breach of contract. For these reasons, GNS's motion to dismiss with respect to Count 9 will be denied.

### I. Count 10: Breach of Fiduciary Duty

"[T]here is no independent tort for breach of fiduciary duty in Maryland" in cases such as this when there are "multiple alternative remedies involving the alleged breach available to [the plaintiff] . . . ." *Swedish*, 190 F. Supp. 2d at 801. Accordingly, I will grant GNS's motion to dismiss with respect to Count 10.

### IV. CONCLUSION

For the reasons stated above, I will grant GNS's motion to dismiss with respect to Counts 1, 4, 7, 8, and 10, and deny GNS's motion with respect to Counts 2, 3, 5, 6, and 9.

### ORDER

Accordingly, it is this 13th day of July, 2016, hereby ORDERED that Defendant GNS's motion to dismiss, ECF No. 17, is GRANTED in part and DENIED in part as follows:

1. Defendant's motion to dismiss with respect to Plaintiff's specific performance, breach of the covenant of good faith and fair dealing, accounting, fraud, and breach of fiduciary duty claims IS GRANTED;

2. Defendant's motion to dismiss with respect to Plaintiff's breach of employment agreement, implied contract, promissory estoppel, equitable estoppel, and breach of operating agreement claims IS DENIED; and

3. Plaintiff will be permitted to amend his complaint for the limited purpose of including a negligent misrepresentation claim relating to Defendant's alleged use of Plaintiff's social security number in certain PayPal and Facebook account transactions. He must do so within 21 days of the entry of this Order and comply with Loc. R. 103.6(c) regarding the "clean" and "redline" version of the amended complaint. Defendant shall file its answer within 21 days after Plaintiff's filing.

So ordered.

/S/
Paul W. Grimm
United States District Judge

dpb